IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 OF PA/DE, et al., | : : : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : : | NO. 14-3248 |
| PENN VALLEY TILE, INC., and HOWARD GRABEL, | : : | |
| Defendants. | : | |

MEMORANDUM

**Jones, J.**                                                                                                       **March 28, 2016**

Now pending before the Court is Plaintiffs' Motion for Summary Judgment (MSJ) (Dkt No. 17), including Plaintiffs' Statement of Undisputed Material Facts (SUMF). Defendants failed to timely respond to Plaintiffs' Motion for Summary Judgment. The Court issued an Order providing Defendants additional time to respond as is permitted under FED. R. CIV. P. 56(e)(1). (Dkt No. 18.) Again, Defendants filed no response. As a result, Plaintiffs' Statement of Undisputed Material Facts will be deemed admitted as is permitted under FED. R. CIV. P. 56(e)(2).

Plaintiffs' Complaint, (Dkt No. 1 [hereinafter "Compl."]), brings four separate counts. Plaintiffs' claims are as follows: Count I – Breach of Contract Under Section 301 of the Labor Management Relations Act Against Penn Valley Tile and Howard Grabel; Count II – Breach of Contract and Breach of Statutory Obligations Under Section 515 of the Employee Retirement Income Security Act, 29 U.S.C. § 1145; Count III – Breach of Contract Under Section 301 of the Labor Management Relations Act and Breach of Fiduciary Duties under ERISA Against Howard Grabel In His Individual Capacity; Count IV – Common Law Conversion as Against Howard Grabel In His Individual and Corporate Capacity. Plaintiffs move for summary judgment under Section 301 of the Labor Management Relations Act ("LMRA") based on breach of the Collective Bargaining Agreement and for summary judgment under the Employee Retirement Income Security Act ("ERISA") based on a failure to make obligatory contributions and Mr. Grabel's breach of his fiduciary duties. Notably, Plaintiffs do not seek to hold Mr. Grabel personally liable for breach of the CBA under Section 301 and do not pursue the common law

1

conversion claim; therefore, Count III insofar as it relates to the LMRA and Count IV are deemed abandoned. The court will address Plaintiffs' motion for summary judgment as to Counts I, II and III to the extent it pertains to the LMRA.[1]

Upon consideration of the aforementioned filings and for the reasons that follow, summary judgment will be granted in favor of Plaintiffs and against Defendants.

**I.    Facts**

The Court recites the undisputed facts as stated by Plaintiff and admitted by Defendant.

Plaintiffs are the Bricklayers & Allied Craftworkers Local 1 of PA/DE ("BAC- 1"), Board of Trustees of the Bricklayers and Allied Craftworkers Local 1 of PA/DE Health and Welfare, Joint Apprentice and Training, Pension, and Annuity Funds and Board of the Trustees of the Bricklayer and Trowel Trades International Pension Fund ("Funds"). (SUMF ¶ 1.) Defendants are Penn Valley Tile, Inc. ("Penn Valley Tile") and Howard Grabel, owner, President and Treasurer of Penn Valley Tile. (SUMF ¶ 3.)

   1. *The Collective Bargaining Agreement.*

Plaintiffs collect contributions from signatory employers pursuant to the rates and procedures detailed in the Collective Bargaining Agreement ("CBA") that BAC-1 executes with various employers in their jurisdiction. (SUMF ¶ 2.) Howard Gravel, on behalf of Penn Valley Tile, executed a CBA with BAC-1 on October 16, 2004. (SUMF ¶ 4.) The CBA and related trust documents contractually require Defendants to make contributions to the Employee Benefit Trust Funds at the rate and in the manner specified in the CBA. (SUMF ¶ 5.) The CBA, along with the Statement of Policy, provides the right of Plaintiffs to conduct random audits to ensure compliance. (SUMF ¶ 11.) The CBA automatically renews on an annual basis absent timely written notice to the contrary. (SUMF ¶ 8.) No notice was provided to terminate the CBA and Defendant Grabel submitted monthly benefit reports under the CBA for eleven years. (SUMF ¶ 9-10.)

---

[1] Plaintiffs seek to hold Howard Grabel joint and severally liable for all damages. Plaintiffs' Motion for Summary Judgment, however, fails to make any argument that Mr. Grabel, individually, is bound by the terms of the contract. Plaintiffs only argue that Mr. Grabel is liable for violations of his fiduciary duties under ERISA. Because there is no argument or support for holding Mr. Grabel personally liable for the audit costs, litigations costs, and attorney's fees under 29 U.S.C. § 1109, Penn Valley Tile, Inc. must be solely accountable for these items under the applicable contract.

## 2. *The Audit and Revised Audit*

In accordance with the audit provisions of the CBA, Plaintiffs' auditors conducted a payroll compliance review of Defendants' records for the work period of January 1, 2010 through March 31, 2013. (SUMF ¶ 12-13.) The audit was conducted on November 18, 2013 by accountant Joel L. Glauser PC, 4753 E. Street Road, Feasterville, PA 19053, and is attached as Exhibit 9. (SUMF ¶ 12.) The audit found that Defendants owed a total of $70,559.66, including unreported contributions, interest, liquidated damages, and audit costs.[2] (SUMF ¶ 13.) The audit found payment discrepancies resulting from Defendants failure to remit contributions on all hours worked and all hours paid, and failure to report all hours worked by covered employees. (SUMF ¶ 14.)

After an objection from Defendant, the audit was revised to reflect that Defendants failed to remit $6,154.14 in principal contributions for its employees to BAC Local 1 and $6,142.59 in principal contributions to the International Funds. (SUMF ¶ 19-20.) In addition, the audit found that Defendants owe $10,573.87 to BAC Local 1 for hourly contributions that were reported and paid to the International Funds, but not to the Local Funds. (SUMF ¶ 20.) After the revised audit, there were no further objections and no evidence has been produced to counter the findings of the audit. (SUMF ¶ 21.)

## 3. *Additional Payments Required Under the CBA*

Under the CBA, an employer who had been delinquent on contributions must pay interest at the rate of 12% for Local Funds and 15% for International Funds. (SUMF ¶ 22; CBA Article 5, Section B.) As a result, Defendants owe interest to the Local Funds in the amount of $3,078.51. (SUMF ¶ 23; Dec. Kiszlo; Dec. Battaglia.) Defendants also owe interest to the International Funds in the amount of $3,979.42 for delinquencies set forth in the audit and $4,554.52 for delinquent August 2012 principal contributions. (SUMF ¶ 23; Dec. Kiszlo; Dec. Battaglia.)

In addition, a delinquent employer is obligated to pay liquidated damages equal to 10% of the principal due. (SUMF ¶ 24; CBA Article 5, Section B.) Defendants owe liquidated damages

---

[2] This number was reduced as the result of a revised audit once it was discovered that Bricklayers & Allied Craftworkers Local 7, located in New Jersey, also audited Defendants and that some of the delinquent benefits payments had been duplicated in the two audits. (SUMF ¶ 15-18.)

to the Local Funds in the amount of $615.41. (SUMF ¶ 25; Dec. Battaglia.)  Defendants owe liquidated damages to the International Funds in the amount of $1,041.15 for the audit period and $1,057.39 for the delinquent August 2012 principal contributions. (SUMF ¶ 25; Dec. Battaglia.)

The CBA, together with the Statement of Policy, further authorizes recovery of costs associated with collective actions. (SUMF ¶ 26; CBA Article 5, Section B.) The cost of the audit to the Local Funds was $4,925.62 and the cost of the audit to the International Funds was $801.85. (SUMF ¶ 27; Dec. Kiszlo; Dec. Battaglia.) Defendants are also responsible for attorney's fees and costs associated with this litigation. (SUMF ¶ 28; CBA Article 5.)

### 4. *Defendant Howard Grabel*

Defendant Howard Grabel is owner, President, and Treasurer of Penn Valley Tile. (SUMF ¶ 26.) The Local Trust documents agreed upon by Plaintiffs and Defendants establish an owner's fiduciary duties. (SUMF ¶ 30; Health and Welfare Trust Document ¶ 2.) Howard Grabel exercised full control over Penn Valley Tile's assets as its owner. (SUMF ¶ 31.) Howard Grabel failed to remit benefit contributions that were plan assets. (SUMF ¶ 31.)

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In order to meet its burden, the party moving for summary judgment need not "produce evidence showing the absence of a genuine issue of material fact"; it can instead merely "point[ ] out ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

**III. Discussion**

    A. Count I – Breach of Contract Under Section 301 of the Labor Management Relations Act

Section 301 of the Labor Management Relations Act ("LMRA") creates a federal cause of action for breach of a collective bargaining agreement ("CBA"). 29 U.S.C. § 185; Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'") (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859, n. 3 (1987)). Section 301 confers federal jurisdiction and a cause of action, while liability is determined by an analysis of the CBA itself. Rosen v. Hotel & Rest. Emp. & Bartenders Union of Phila., Bucks, Montgomery & Delaware Cntys., Pa., 637 F.2d 592, 597 (3d Cir. 1981) (analyzing breach of a section 301 contract by looking to the terms of the CBA itself). The relevant portions of the CBA at issue here are attached as Exhibit 4 to the Motion for Summary Judgment.

    *1. The Collective Bargaining Agreement is Valid.*

The CBA at issue was executed on October 16, 2004, by Plaintiffs and by Howard Grabel, president and treasurer of Penn Valley Tile, on behalf of Defendants. (SUMF ¶ 4.) By its terms, the CBA terminated on April 30, 2009, but it also contains an "evergreen clause" extending the CBA on an annual basis absent timely written notice. (SUMF ¶ 8.)  No notice was provided by either party and, from the time of execution until Defendant Penn Valley Tile ceased operations, Defendants contributed to the Funds as required under the CBA. (SUMF ¶ 9-10.) "Courts consistently conclude that contracts with 'Evergreen Clauses' requiring written notice are not terminated absent compliance with the terms of the contract." Residential Reroofers Local 30-B Health & Welfare Fund of Phila. & Vicinity v. A & B Metal & Roofing, Inc., 976 F.

Supp. 341, 347 (E.D. Pa. 1997). In addition, even in the absence of an unexpired CBA, "the conduct of the defendant in paying past contributions evidences an intent to be bound by the employee benefit trust fund agreements or CBA." Composition Roofers Union Local No. 30 Welfare Trust Fund v. L.A. Kennedy, Inc., No. CIV. A. 93-1558, 1996 WL 220975, at *5 (E.D. Pa. May 2, 1996) (Hutton, J.). Defendant did not provide written notice in this case and continued to act as if the CBA was in effect for eleven years. (SUMF ¶ 9-10.) Therefore, it is clear the CBA continued to govern the relationship between the parties during the relevant time period and until Defendants ceased operations.

> 2. *The Terms of the Collective Bargaining Agreement Require Defendants to Make Timely Benefit Contributions.*

Under the CBA, Defendants contractually agreed to remit payments to the benefit Funds by the fifteenth of each month. (CBA, Article 5, Section B, ¶ 1.) Furthermore, Defendants agreed to comply with the Trust and Plan Documents for each Fund in making the contributions. (CBA, Article 5, Section B, ¶ 6.) To ensure compliance with the required contributions, Defendants agreed to be audited at any reasonable time including an examination of any and all of Defendants' records. (CBA, Article 5, Section F.)

> 3. *The Collective Bargaining Agreement was Breached when Defendants Failed to Make Timely Benefit Contributions.*

Pursuant to the terms of the CBA, an audit of Defendants was conducted on November 18, 2013 at Penn Valley Tile's corporate offices. (SUMF ¶ 12.) The audit was conducted by auditors at Novak Francella and covered the work period of January 1, 2010 through March 31, 2013. (SUMF ¶ 12-13.) The audit found payment discrepancies resulting from Defendants failure to remit contributions on all hours worked and all hours paid, and failure to report all hours worked by covered employees. (SUMF ¶ 14.) Defendants objected to the audit to the extent that some of the missing contributions were also counted in an audit conducted by Bricklayers & Allied Craftworkers Local 7 of New Jersey, but no other objections were made. (SUMF ¶ 15-18.) The audit was subsequently revised in order to correct the duplicative delinquencies counted in both audits and no further objections have been made. (SUMF ¶ 21.) Defendants' failure to remit contributions to the Funds as discovered by the audit, without any evidence to the contrary,

demonstrates a violation of the CBA and accompanying Trust documents. Int'l Bhd. of Elec. Workers Local Union No. 654 Health & Welfare Fund v. Indus. Valley Controls, Inc., No. CIV.A. 09-5840, 2011 WL 482521, at *3 (E.D. Pa. Feb. 4, 2011) (accepting an audit after finding that "in the absence of any opposition, the evidence provided is sufficient").

> *4. The Remedies Provided under the Collective Bargaining Agreement Include Collection of the Delinquent Contributions, Interest, Liquidated Damages, Costs, and Attorney's Fees.*

After an audit finds that an employer has failed to make the proper contributions, those missing payments must be made to the appropriate Funds. (CBA, Article 5, Section B, ¶ 5.) In addition, the delinquent employer is required to pay interest at the rate of 12% for Local Funds and 15% on International Funds. (CBA, Article 5, Section B, ¶ 1; Local Funds Statement of Policy, Section 4.) The CBA further imposes liquidated damages in the amount of 10% of the principal amount due. (CBA, Article 5, Section B, ¶ 5.) The same section of the CBA permits the recovery of costs and attorney's fees associated with collection when the delinquent contributions must be referred to an attorney. (CBA, Article 5, Section B, ¶ 1.) Under the Local Funds' Statement of Policy, the delinquent employer is likewise required to pay all costs associated with the audit. (Local Funds Statement of Policy, Section 4.)

In light of the foregoing, summary judgment is hereby granted as to Count I.

B. Count II – Breach of Contract and Breach of Statutory Obligations Under Section 515 of ERISA 29 U.S.C. § 1145

The Employee Retirement Income Security Act of 1974 (ERISA) requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Failure to do so is therefore a statutory violation under ERISA. Because Defendant Penn Valley Tile, an employer, failed to make contributions under the terms of the CBA and related trust documents as required by ERISA, Defendant's violation of the CBA is likewise a statutory violation under ERISA. The purpose of Section 515 of ERISA is to create a federal cause of action for violations of a CBA as it relates to employee benefit funds, but with severe limitations

on the defenses available to employers. Connors v. Fawn Min. Corp., 30 F.3d 483, 490 (3d Cir. 1994) (recognizing that ordinary contractual defenses do not apply – the CBA must be void, not merely voidable). Here, Defendant Penn Valley Tile makes no claim that a relevant defense applies. Therefore, Defendant Penn Valley Tile, as an employer, is in violation of Section 515 of ERISA.

In light of the foregoing, summary judgment is hereby granted as to Count II.

### C. Count III – Breach of Fiduciary Duties under ERISA as Against Howard Grabel in his Individual Capacity

ERISA further imposes liability on individual persons who breach their fiduciary duties with respect to employee benefit plans. ERISA holds "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties . . . personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]"29 U.S.C. § 1109. Section 3(21)(A) of ERISA defines a fiduciary: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title." Because Mr. Grabel failed to remit the contributions to the funds in breach of his duties, if he is a fiduciary then he will be individually liable.

#### 1. Mr. Grabel is a Fiduciary as Defined under ERISA.

The Third Circuit has laid out the considerations necessary for determining whether an individual is a fiduciary under ERISA in Confer v. Custom Eng'g Co., 952 F.2d 34, 36 (3d Cir. 1991). The case directs courts to "consider whether a party has exercised discretionary authority or control over a plan's management, assets, or administration." Id. (citing Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146, 1148-51 (3d Cir.1989)). "If a person's authority or control does not concern 'management', or 'plan assets', that person is not a fiduciary under section 3(21)(A)(i). Id. (citing Mack Boring & Parts v. Meeker Sharkey Moffitt,

Actuarial Consultants, 930 F.2d 267, 270 (3d Cir.1991)). "Similarly, if a person's discretionary authority does not concern 'administration' of a plan, that person is not a fiduciary under section 3(21)(A)(iii)." Id. Therefore, the Court must decide whether Mr. Grabel exercised discretionary authority over a plan's management, assets, or administration.

"Fiduciary status attaches to a person managing an ERISA plan under subsection (i) of § 1002(21)(A) if that person exercises discretion in the management of the plan, or if the person exercises any authority or control over the management or disposition of the plan's assets." Srein v. Frankford Trust Co., 323 F.3d 214, 220-21 (3d Cir. 2003) (citing Bd. of Trs. of Bricklayers and Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs. Inc., 237 F.3d 270, 273 (3d Cir.2001)). The Third circuit "recognizes that the significant difference between the two clauses of subsection (i) is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets." Id. (internal quotations omitted). In addition, the Third Circuit has directed courts to look at the language of the Plan documents in establishing a fiduciary. Confer, 952 F.2d at 37. Plaintiffs here rely on Mr. Grabel's control over plan assets to establish his status as a fiduciary and the language of the Trust documents. (MSJ 20.)

First, the CBA establishes that contributions become plan assets as of the date on which they are due as stated in Section B(1): "Contributions required under this Agreement shall become assets of each Fund as of the date on which they are due and the Employer agrees that such contributions are held in trust for the applicable Fund as of the date on which they are due." (CBA, Section B(1).) Therefore, the language of the plan establishes that the contributions Mr. Grabel was required to make to the plan as treasurer of Penn Valley Tile constitute "plan assets." Furthermore, finding unpaid contributions that would otherwise have become part of the plan assets if properly paid are "plan assets" when so specified by the terms of the agreement is in accordance with the practice of this court. See, e.g. Local Union No. 98 Int'l Bhd. of Elec. Workers v. RGB Servs., LLC, No. CIV.A. 10-3486, 2011 WL 292233, at *6 (E.D. Pa. Jan. 28, 2011) (citing a string of cases relying on the language of the applicable agreements); Teamsters Health & Welfare Fund of Phila & Vicinity v. World Transp., Inc., 241 F. Supp. 2d 499, 506 (E.D. Pa. 2003) (relying on the language of the applicable agreement to determine whether past due contributions are plan assets). In addition, because the contributions are withheld from

paychecks and deposited into Funds, they likewise qualify as "plan assets" even without specific designation in the CBA. Solis v. Koresko, 884 F. Supp. 2d 261, 285 (E.D. Pa. 2012) (noting that Department of Labor regulations define "plan assets" where contributions to a plan are withheld by an employer) (citing 29 C.F.R. § 2510.3-102; Secretary of Labor v. Doyle, 675 F.3d 187, 203 (3d Cir.2012)). Because Mr. Grabel was responsible for remitting the contributions to the Funds, Mr. Grabel exercised control over those plan assets. Mr. Grabel is thus a fiduciary as defined by ERISA based on his control over plan assets. Id. ("control over such assets—even without discretion—is sufficient to confer fiduciary status").

Second, even if Mr. Grabel were not made a fiduciary by virtue of his control over plan assets, the language of the Trust documents themselves make Mr. Grabel a fiduciary. See, e.g. Confer, 952 F.2d at 37-38 (reviewing plan to determine whether it made officers fiduciaries); Wettlin Associates, Inc., 237 F.3d at 275 (3d Cir. 2001) (referring to the language of the contract as part of the fiduciary analysis). The Trust documents, in pertinent part, state:

> Nonpayment of contributions beyond the date on which they are due shall constitute a breach of the Employer's fiduciary obligation[.] [T]he Trustees shall have the authority and right to seek personal liability against an owner, principal, or officer of an Employer for breach of fiduciary duties with respect to the disposition of such contributions as assets of the Fund.

(Amendment 2 of the Agreement and Declaration of Trust for the Health and Welfare Fund.) Therefore, the Trust documents specifically designate the owner of the company as a fiduciary who must ensure the proper payment of contributions in accordance with the fiduciary obligation. Furthermore, Mr. Grabel does not dispute his status as a fiduciary under the language of the Trust documents. (MSJ 21-22.) Mr. Grabel is thus a fiduciary under ERISA based on his control over plan assets and the language of the plan itself.

### 2. *Mr. Grabel Breached His Fiduciary Duties*

Mr. Grabel failed to remit contributions to the Funds, instead comingling plan assets with Penn Valley Tile's general assets and using those funds to pay himself and other creditors. As a fiduciary, Mr. Grabel is obligated to act in the best interest of those to whom he owes a fiduciary duty. Ream v. Frey, 107 F.3d 147, 155 (3d Cir. 1997). Mr. Grabel's failure to make contributions

that were plan assets upon becoming due violates his fiduciary duty under ERISA. 29 U.S.C. § 1109(a).

### 3. *Mr. Grabel is Personally Liable to Restore Plan Losses and Profits*

Because Mr. Grabel violated his fiduciary duty under ERISA, he "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109. Mr. Grabel must restore the unpaid plan assets and any profits he gained from the removed assets. Leckey v. Stefano, 501 F.3d 212, 228 (3d Cir. 2007), as amended (Dec. 21, 2007).

Determining what the exact value of the Funds would now be if Mr. Grabel had properly remitted the contributions is an impossible task. As a result, the Court retains great discretion in calculating pre judgment interest. Chaaban v. Criscito, 468 F. App'x 156, 164 (3d Cir. 2012) ("Because of this inherent difficulty, the district courts have 'broad discretion' in resolving the problem [of prejudgment interest]."). This difficulty in calculating prejudgment interest is likely what led Plaintiffs to include a provision for calculating interest in the CBA itself and why Congress permits the use of a rate provided under the plan in other sections of ERISA. See e.g. 29 U.S.C. § 1145 ("interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26"). In addition, relying on the contractually provided for interest rate is in accordance with the purpose of ERISA, which is to protect contractually defined benefits. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985). Therefore, in calculating the losses suffered as a result of Mr. Grabel's breach, the Court will rely on the contractually agreed upon interest rate.

Plaintiffs also seek to hold Mr. Grabel personally liable for liquidated damages imposed under the CBA based on the breach of his fiduciary duties. Although the Supreme Court has been clear that ERISA does not permit a court to award extra-contractual damages, it is less clear whether the reverse is necessarily true – that a court can always award contractual damages, even if the damages are not provided for in the language of ERISA. Id. Here, liquidated damages are imposed under the CBA, but not under the applicable section of ERISA – 29 U.S.C. § 1109.

Therefore, the Court must decide whether the liquidated damages that are provided for in the contract, but not in the language of the statute itself, can be sought against Mr. Grabel individually.

Awarding liquidated damages against an individual liable under § 1109 has neither been condemned nor condoned. This Court has recognized, however, that it is impossible to "believe Congress wanted to make things worse by voiding provisions of master agreements that penalize employers for late payments." Carpenters Health & Welfare Fund of Phila. & Vicinity v. Bldg. Tech, Inc., 747 F. Supp. 288, 297 (E.D. Pa. 1990); see also All. Elec., Inc. v. Local Union No. 98, Int'l Bhd. of Elec. Workers, No. CIV. A. 91-6892, 1992 WL 358072, at *6 (E.D. Pa. Oct. 20, 1992) (allowing liquidated damages provided under a plan but not under ERISA based on an "analysis of the language, scope, legislative history, and purpose of [ERISA]"). This Court has also imposed such liquidated damages clauses against individuals in breach of their fiduciary duties, particularly when the party does not dispute the imposition of such damages as is the case here. Trustees of Nat. Elevator Indus. Pension v. Lutyk, 140 F. Supp. 2d 447, 452 (E.D. Pa. 2001) (recognizing individual defendant "would be liable for the full amount of the unpaid employer payments, liquidated damages and interest sought by plaintiff") aff'd sub nom. Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188 (3d Cir. 2003).

The only remaining bar then is whether the liquidated damages in this case are void as a penalty. Because the liquidated damages are pegged as a percentage of the amount unpaid, and because Defendant points to no evidence demonstrating it is in fact a penalty, the liquidated damages can be fairly considered compensatory rather than punitive. United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 289 (3d Cir. 2007); Teamsters Pension Trust Fund of Phila. & Vicinity v. John Tinney Delivery Serv., Inc., 732 F.2d 319, 324 n. 4 (3d Cir. 1984). Further, liquidated damages of ten percent, as requested in this case, has specifically been found to be a reasonable estimate of compensatory damages unless evidence in the record demonstrates otherwise.[3] All. Elec., Inc., 1992 WL 358072, at *7. Without any facts

---

[3] In this case in particular, it is conceivable that Defendants could have adduced facts to show that the interest rate combined with the liquidated damages clause is an unenforceable penalty. Defendants, however, chose not to respond to the Motion for Summary Judgment and therefore the Court has not been pointed to any facts in the record that would permit a finding that the clauses here act as a penalty.

demonstrating that the liquidated damages clause operates as a penalty rather than as compensation for the breach, the Court finds that the policy behind ERISA permits imposition of such damages against Mr. Grabel individually.

Mr. Grabel is personally liable under 29 U.S.C. § 1109 for breaching his fiduciary duties. As a result, the Court must require Mr. Grabel to make good to the plan any losses resulting from his breach. In addition, the Court may order any additional remedial relief that is appropriate. Given the terms of the CBA and related Trust documents coupled with the precedent of this Court, and based on the behavior of Mr. Grabel, the Court will permit additional remedial relief in the form of liquidated damages against Mr. Grabel. Therefore, Mr. Grabel is joint and severally liable for all damages owed to Plaintiffs for his breach of his fiduciary duties.

In light of the foregoing, summary judgment is hereby granted as to Count III insofar as it relates to Mr. Grabel's violation of his fiduciary duties under ERISA.

## **CONCLUSION**

Based on the foregoing analysis, summary judgment is granted in favor of Plaintiffs and against Defendants.

An appropriate order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. DARNELL JONES, II    J.